RICKER *versus* BARRY.
RICKER *versus* BARRY & WIFE.
RICKER *versus* BARRY.

One purchased land, as bounded on the East by land of L, and on the South by land of D. The land of L extended a part only of the distance to D's land, but the course of L's line, if continued, would strike the land of D ; — *Held,* that the land purchased is bounded on that continuation-line.

In a deed of land, if the boundary descriptions disagree, and one of them is expressed as being certain and the other as being uncertain, the former must prevail, in the absence of controlling circumstances.

In the construction of such a deed, however, a long occupation, pursuant to the uncertainly expressed boundary, would have much influence.

Where, by one of the persons having a right of passage, an action is brought against another of them for obstructing it, no defence is established by proof that the plaintiff has obstructed it at its termination adjoining his own land.

ON REPORT from *Nisi Prius,* TENNEY, J. presiding.

The first and second actions are writs of entry.   The third is for obstructing a passage way.

The cases will be better understood by referring to the diagram.

York Street,      North 74° 40'.

. The tenants occupy and claim the lot lying within the lines A, C, and D, Mr. Barry having a deed of the East part, and Mrs. Barry having a deed of the West part. Their title is derived from Rufus Dwinel.

Dwinel's title was by a deed from Philip Coombs, " beginning on York street adjoining land of Mrs. Greeley ; thence running by York street about fifty-five feet to a way of twelve feet laid down by said Coombs forever South-westerly ; thence North eighty feet ; thence East about forty-eight feet to land of the aforesaid Mrs. Greeley ; thence by said Greeley's land South-easterly about eighty feet to York Street to the first mentioned bounds."

The demandant claims all the land in the gore N and coming to the line B, 'thus including the piece marked X, which is the land in dispute. His title is under a levy on execution against said Coombs, bounding him Westerly on land of Allen Gilman ; Easterly 84 feet on land owned or occupied by Mark Little ; Southerly by land of Rufus Dwinel.

There was some evidence, which is sufficiently detailed in the Opinion of the Court, respecting a fence formerly at or near the line A, and respecting a stone at or near the Eastern end of that line, and also respecting some fences across the passage way.

The Opinion of the Court, SHEPLEY, C. J., WELLS, RICE, and HATHAWAY, J. J., was drawn up by

SHEPLEY, C. J. — The title upon which the demandant rests for a recovery in the two first named actions, is derived from Philip Coombs, by the levy of an execution against him, in favor of Henry Warren, made on July 4, 1842.

The land was described in the return of the officer as bounded Westerly on land of Allen Gilman, Northerly on land occupied by Jonathan Young, Easterly eighty-four feet on land owned or occupied by Mark Little, and Southerly by land of Rufus Dwinel.

The testimony proves, that Little did not own or occupy land on the East more than about half the distance between

the land of Young on the North and the land of Dwinel on the South.

It is however certain, that the levy was made upon land lying between the lands owned or occupied by those persons. The line upon the East after leaving the land of Little will extend in a direct course Southerly to the land of Dwinel. The false description bounding it by the land of Little the whole distance upon the Eastern line will not affect the conveyance, for the land taken by the levy will be sufficiently described by rejecting so much of the description as is found to have been false. The land being bounded Southerly on the land of Dwinel, the East line will extend it to land owned by him although it may be necessary to extend it more than eighty-four feet in length, and although Dwinel may have occupied and fenced his lot further North than his true line. *Crosby* v. *Parker,* 4 Mass. 110.

It therefore becomes necessary to ascertain the bounds of the land, which Coombs had before conveyed to Dwinel on August 29, 1833. There is no dispute respecting the two first lines named in that conveyance.

The third line is described as extending from the end of the second line "East about forty-eight feet to land of the aforesaid Mrs. Greeley;" and the fourth line, "thence by said Greeley's land South-easterly about eighty feet to York street to the first mentioned bounds."

If the third line be extended from the Northerly end of the second line East to Greeley's land, it will strike it too far Southerly to allow the fourth line to be "about eighty feet," and will leave it but little more than sixty-four feet.

The course named in the deed for the third line and the distance named for the fourth line cannot both be correct.

The course is not always to be regarded as more satisfactory than the distance. *Davis* v. *Rainsford,* 17 Mass. 207.

When one is described with certainty and the other is not, there can be no doubt, that the one certainly described must govern in the absence of other controlling circumstances.

The course of the third line is made certain. It is East;

and if it had been described as extending Easterly without any object to control its course, it must have been considered as extending due East. *Brandt* v. *Ogden*, 1 Johns. 156. The distance named in the fourth line, being preceded by the word about, cannot be regarded as certain. It could only be regarded as extending precisely eighty feet, if there were no monuments or other objects to determine its true length. *Cutts* v. *King*, 5 Greenl. 482.

It is insisted, that there are facts proved, which should cause the distance named in the description of the fourth line to prevail over the course named for the third line. That the intention also is made apparent to convey a lot bounded upon the street fifty-five feet and extending Northerly from it eighty feet.

Such may have been the intention, but when the parties to the deed clearly and certainly described the course of the line bounding the lot upon the North, and left the length of the line bounding it upon the East uncertain, there are no sufficient indications of it to be collected from the deed and proof of the circumstances existing when it was made, to authorize such a conclusion. It is probable, that the error was not made in describing the course of the third line differently from what was really intended, but by omitting to notice, that the line of the street would not be found to coincide with one extending East from the South end of the West line of the lot.

The statement made in argument, respecting the facts referred to is, that such a lot as the tenants claim, "has been used and occupied and fenced as such, and admitted by the acts of the parties as such, from the time of Coomb's conveyance till this time."

There would be much force in the position, if it was found to be well supported by the testimony. The fence referred to, does not appear to have been erected very soon after the deed was made, or for the purpose of designating the North line of the lot. The witness, Coombs, states, that it was not erected "till two or three years after the conveyance;" and

Ricker v. Barry.

he does not state by whom or for what purpose it was erected, a stone post was found at the Easterly end of that fence, and the witness, Dean, testifies, that "he placed it there, but not for a monument where it stands; that there was a fence from the twelve feet way to the Greeley line; he does not know its age, but from its appearance it had not been there more than seven or eight years."

The witnesses, Coombs and Eaton, testified "that a fence was standing on this land nearly identical in its position and course with the line" "which the defendants claim to be the true back line of their lots, which fence had been built some years; how long neither could tell; and that there was a stone at or near the end of that fence; but whether intended for a monument or not, they could not tell from any indications."

This testimony when considered in connection with that of Dean fails to establish the position; or to prove, that the parties owning the adjoining lands admitted, that the fence was erected to designate the North line of the lot, or that it stood upon it.

The demandant, by a correct construction of the conveyances, appears to be the owner of the triangular piece of land claimed by him; and he will be entitled to a judgment in both the real actions.

The "passage way" was established, according to the testimony, by Philip Coombs, then owner of the lands now owned by these parties. It is referred to in his deed to Dwinel as "a way of twelve feet laid down by said Coombs forever." This was sufficient to convey to the grantee, whose land was bounded upon it, the right to use it as a way. The grantor would continue to be the owner of the land subject to the servitude, and he would be also entitled to use the way. His title and rights have been conveyed to the plaintiff. There is proof, that the defendant has built a fence across the way.

The principal objection made to a maintenance of the suit is, that the plaintiff "has blocked up and cut off the passage way by a board fence across it." The testimony does not

appear to support the allegation.    According to the testimony
of the witness Stafford, the fence referred to was not built
across the way, but on the Westerly side of it, between the
land of the plaintiff purchased of Gilman, and the way.    The
witness also states that there is a picket fence at the North-
erly end of the passage way ; but it does not appear by whom
it was erected or maintained.    If the way had been obstruct-
ed in one place by the plaintiff, it is not perceived, that
the defendant would thereby be authorized to obstruct it in
another place.

A default is to be entered in each of the three actions.

Rowe & Bartlett, for the plaintiff.

C. P. Brown, for the defendants.