## Mohney *versus* Cook.

The law relating to the observance of the Sabbath, defines a duty of the citizen to the state, and to the state only.

A party who erects an obstruction in a navigable stream, and thereby occasions an injury to another, cannot, in an action for such injury, set up as a defence that the plaintiff was unlawfully engaged in worldly employment on Sunday, when the injury occurred.

ERROR to the Common Pleas of *Armstrong county.*

This was an action on the case by David Mohney and William Girtz against George Cook, for injuries done to the plaintiffs'. boat, by a dam erected by defendant in Redbank Creek, in Armstrong County. The evidence in the case shows that the plaintiffs were the owners of a flat-bottomed boat, which was laden with pig-metal, and was descending the creek on its way to market, in the month of November, 1852. The boat was strongly built, and had a skilful pilot and an efficient crew. Before that time the defendant had erected a dam across the creek, of the height of three or four feet, and continued to maintain it there. The plaintiffs' boat, while descending the stream, was wrecked on this dam, on the Sabbath day. The boat sunk with the metal. This action is brought to recover damages for the injury to the boat, and expense, &c., of reshipping the metal. Redbank Creek, "from its mouth up to the second great fork," which includes the site of this dam, was declared a public highway by the Act of 21st March, 1798.

The defendant relied upon the Act of the 23d March, 1803, as justifying the erection of the dam; and that the plaintiffs, being engaged in a violation of the Act of 22d April, 1794, forbidding worldly employment on Sunday, were not entitled to recover.

The court below (BURRELL, P. J.) charged the jury as follows:—

"The plaintiffs sue to recover damages for injuries received by their boat in passing down over defendant's dam, in Redbank Creek. This stream is declared a. highway by the Act of 21st March, 1798. Afterwards, in order to encourage the erection of mills, much needed in the newer settlements, the Act of 1803 was passed, permitting owners of adjoining lands to construct dams in certain streams which had been declared highways, "provided they shall not obstruct or impede the navigation in such streams, &c." The defendant then had a right to construct his dam in this stream, keeping within the proviso in the statute. It is scarcely necessary to say, indeed it is not seriously disputed, that this dam, such as it is shown to be, is an obstruction to the navigation. Taking this for true, it is still for the plaintiffs to show that the injury to their boat was caused by the dam, and while

[Mohney v. Cook.]

they were exercising ordinary care and skill in its navigation. If they have shown this, they would be entitled to recover damages, unless there be some other ground upon which they are defeated.

"It is alleged by defendant, and not disputed by plaintiffs, that the alleged injury occurred on Sunday; that they started to run out their boat on the morning of that same day, and arrived at the dam about noon, and that they were then in the pursuit of their worldly employment and business. The question raised is, can they recover at all under these circumstances?

"Christianity is said to be part of the common law of Pennsylvania, and the observance of the Sabbath one of its requirements. It is however true, that so long as it remained only a moral or religious duty, there was no civil penalty for its breach. But in 1794, the non-observance of the Sabbath by following worldly employment was prohibited by the legislature, and a punishment by fine annexed to the act. The plaintiffs' counsel do not pretend that they are within the exception in the statute in favour of "work of necessity and charity." The act of the plaintiffs, in starting and running their boat on Sunday, was unlawful—and as much one of the *mala prohibita* as any act made punishable by statute only. It is then while they are in the actual commission and doing of this forbidden thing that they are injured by an obstruction in the stream. The injury is incident to their conduct, and is one which could not have happened when it did if they had not been running their boat at that time. It is true the same thing might have happened to them the day before or the day after—and it might not—the argument is not to be either strengthened or weakened by the suggestion of possibilities. So whether the dam was or was not a nuisance before and after that particular Sunday, is not important, as the whole difficulty comes from the fact that the alleged injury occurred on that day.

"The liability of the owner of the dam does not arise merely because his dam is too high for boats to pass safely, but it is predicated upon the right of the party injured to use and enjoy the stream as a highway, for the purposes and in the manner in which he was using it when injured. If the stream were not a highway at all, or not a highway for a particular boat, we apprehend the basis of the right to recover for injury to that boat would not exist. If the legislature had forbidden the navigation of Redbank by metal boats, the stream would not be a highway for such boats. If the navigation there was forbidden during a particular month, there would be no right of highway during that month. The argument is that the prohibition of all worldly business on Sunday necessarily includes a prohibition of the use of highways by those whose pursuits are there carried on. The plaintiffs' worldly employment was boating metal on a public highway; the use of the highway was the means by which, and the

highway itself the place where their business was transacted. Now if they are forbidden by law to transact their business at all during a particular month or a particular day, it follows that the means and appliances of their avocation are included in the prohibition during that month or day. . If the use and occupation of the highway be forbidden them, the stream ceases to be a highway as to them for the time being. It is conceded the right of highway exists on Sunday where not taken away, and so if a mere traveller in his skiff had passed over this dam on Sunday, and sustained injury in the passage, he would have a right to recover, because he is not forbidden by the statute to travel, and therefore his right of highway continues on Sunday. By the Act of 1803, the legislature provided for the supply of fish in the highway streams, but by the Act of 1794, fishing in them on Sunday is prohibited. Now a fishing party would have as much right to sport in this stream as the plaintiffs had to follow their business upon it on the Sabbath, and if the sportsmen should lose their boat upon a dam, would they not have the same right to recover damages? . They are all governed by the same law, and if one is to be protected from the accidents he may encounter whilst acting in violation of it, there seems no reason why the other should not be protected also.

" The point then is—had the plaintiffs a legal right of highway in Redbank on Sunday? We have seen that their use of the highway for carrying on their worldly business was forbidden, and was therefore unlawful. It seems plain they could not have a legal right to do an illegal thing,—and if they had not, their right of highway, the basis of their right to recover for injury sustained from a nuisance in the highway, is wanting in the case.

"The defendant's counsel have urged the analogy which exists between this case and that of Sunday contracts. The analogy is denied—let us examine it. Since the Act of 1794, contracts made on Sunday have been held entirely void. It was once decided at Philadelphia that they were void at common law. But the Supreme Court in Kepner *v.* Keifer, 6 *Watts* 231, exploded this idea. Now, as some suppose, are they held void inasmuch as both parties to them acted wrong and immorally in bargaining on the Sabbath, and for this reason neither is permitted to recover by way of punishment. But we find that in fact the question is always raised by one of the parties who desires to escape from the contract. He is rewarded for his immoral act by a decision against the validity of the contract, while the other party, who loses its benefits, is the only one punished. The true ground is clearly enunciated by Judge KENNEDY in Kepner *v.* Keifer— " that the execution of the contract on the Lord's day, came within the prohibition of the Act of 1794, and was *therefore* void." The true doctrine then is that the Sunday contract is void, be-

[Mohney *v.* Cook.]

cause it is an act of worldly business, and the parties are held to
have no legal rights or remedies arising out of a transaction done
at the forbidden time.    And herein lies the analogy.    If the party
seeking to enforce his Sunday contract is turned out of court
without remedy, and upon these grounds, upon what principle can
the plaintiffs demand to have all their rights and remedies pre-
served in relation to matters arising from their violation of the
Act of 1794?

   "We are of opinion that the plaintiffs had no legal right of
highway in Redbank Creek for the pursuit of their worldly business
on the Sabbath day—that he who has no right of highway at the
time he sustains injury from a dam in that stream, has no remedy
to recover damages in a civil action from the owner of it—and
further that the plaintiffs, at the time of the alleged injury, were
acting in violation of the Act of 1794, the injury being incident
to and concordant with their unlawful act—and that therefore the
law withholds all remedy from them.    They cannot for these rea-
sons, in our opinion, recover in this suit.    This conclusion we
think follows both reason and analogy, and is in furtherance of
the well defined policy of our law, illustrated by recent decisions
of our highest courts—which is to preserve the Sabbath day from
the desecration of worldly business and employment.

   "To which opinion of the court, the counsel for the plaintiffs
did then and there except and pray the court to seal a bill of
exceptions, which is done."

   The jury found for the defendant.

   The charge of the court below was assigned here for error.


   *Phelps*, for plaintiffs in error.

   The erection and maintenance of a dam in a public stream is a
tort on part of defendant, and subjects him to an action for injury
sustained both on general principles as well as by the express
terms of the Act of 1803.    The position of the court, that the de-
fendant, though a wrongdoer, is protected because the plaintiffs
were engaged in the violation of a penal statute, is predicated
upon the principle that a person in that situation is out of the pro-
tection of the law.

   There can be no set-off in actions of tort.    If both are guilty
of wrongful acts, they do not extinguish each other.    The defend-
ant cannot invoke a public wrong to justify a private injury.

   The court below draws its analogies from actions on contracts.
It is respectfully submitted that these analogies are fallacious.    It
is now settled that an act done in violation of a penal statute, can-
not be the basis of a legal contract, as an agreement made on
Sunday is void.    But why cannot an action be maintained on the
contract?    Simply because the contract is void—not for the rea-
son that it does not possess all the requisites of an otherwise legal

contract—but upon principles of public policy. In the action upon the contract the plaintiff asks to recover upon the terms of the agreement. That being one entire transaction made by the concurrent act of both parties, and being void, cannot sustain an action. But in this case the cause of action is the nuisance, which is the sole act of the defendent, independent of any concurrence or connivance of the plaintiffs, and unless he can call in a collateral wrong of the plaintiffs as a justification, he must fail. This, it is believed, he cannot do.

The case most nearly resembling the present in principle is The Commonwealth *v.* Eyer, 1 *Ser. & R.* 347. It was an indictment for assault and battery. The defendant justified in defence of his possession. It appeared that defendant was violating the Sabbath by working with a number of hands in his ship-yard. The prosecutor, a justice of the peace, forcibly entered to prevent him from working, or procure evidence to convict him, when the assault was made and the prosecutor expelled. The Supreme Court held that defendant was justified. The principle of the case is: that although the defendant was violating the Sabbath, it was no justification for the prosecutor, although a justice, to make forcible entry upon his premises. Another inference from this is, that the prosecutor was guilty of a trespass, and liable to an action for it, although the other party was violating the Sabbath.

*Golden* and *Fulton,* for defendant in error.

It was solemnly adjudged in Updegraff *v.* The Commonwealth, 11 *Ser. & R.* 394, that Christianity is part of the law of the land. The observance of the Sabbath is one of its most important features, and the duty is enjoined by the highest legislative and judicial authorities of the country.

Public policy too requires that all the enactments of the state should be enforced. Where this is wanting, public authority sinks into contempt. Every contract made in violation of a statute is void: Mitchell *v.* Smith, 1 *Binn.* 110; Lord Ch. J. HOLT, *Carth.* 252; 3 *East* 225; Biggs *v.* Lawrence, 3 *T. R.* 454; Clugas *v.* Penaluna, 4 *T. R.* 466; Waymell *v.* Reed, 1 *T. R.* 599; Mitchell *v.* Cockburn, 2 *H. Blk.* 379; Camden *v.* Anderson, 6 *T. R.* 730; 2 *Wils.* 348; Kepner *v.* Keifer, 6 *Watts* 233; *Cowp.* 343.

But there is another reason in this case why the plaintiffs cannot recover. *Redbank Creek was not a highway on Sunday.* It will not be pretended that prior to the Act of 1798, any action could have been maintained for damages done to a boat descending that stream. It is, then, from this act that the plaintiffs derive their right to recover at all. But the right is to be exercised in subserviency to other subsisting laws. Hence, the Act of 1794 being in full force, is to be looked into, in order to see what the law was at the time the plaintiffs allege they suffered the injury;

[Mohney v. Cook.]

for it is perfectly plain the law of 1798 did not repeal that of 1794; both then are to be construed together, and the only logical result at which we can arrive, is, that for six days out of seven Redbank Creek was a public highway, but that on the first day of the week it remained as before, and the rights of these plaintiffs, as regarded that portion of time, were just the same as if the Act of 1798 had never been passed. And why not? Had not the legislature the right to prescribe the extent of its grant? If it could say "the right of highway shall only extend to the second great fork," why not say it shall only extend to six days out of seven? And this is surely all the legislature intended. The lawgivers never designed to grant a license for Sabbath desecration. Hence, we think, it is the legitimate and natural conclusion, that the right of highway extends to secular time only. And on this point we would refer the court to the recent case of Omit v. Commonwealth, 9 *Harris* 426; there the plaintiff in error tried to justify the sale of liquor on Sunday, because an act subsequent to that of 1794 licensed him to sell generally; but the court very justly exploded that idea, and held that although the permission was general, yet that it only extended to the six secular days of the week. So here. The act creates Redbank Creek a public highway in general, but it only extends to the time in which worldly employments may be lawfully performed.

The slightest examination of the case cited by the plaintiffs in error, from 1 *Ser. & R.*, will satisfy any one that it is not in point. The only question determined in that case was that a justice of the peace has no right to make a *forcible* entry into another's premises in order to procure evidence to convict him of a breach of the Sabbath.

The opinion of the court was delivered by

LOWRIE, J.—The declaration that Christianity is part of the law of the land, is a summary description of an existing and very obvious condition of our institutions. We are a Christian people, in so far as we have entered into the spirit of Christian institutions, and become imbued with the sentiments and principles of Christianity; and we cannot be imbued with them, and yet prevent them from entering into and influencing, more or less, all our social institutions, customs, and relations, as well as all our individual modes of thinking and acting. It is involved in our social nature, that even those among us who reject Christianity, cannot possibly get clear of its influence, or reject those sentiments, customs, and principles which it has spread among the people, so that, like the air we breathe, they have become the common stock of the whole country, and essential elements of its life.

It is perfectly natural, therefore, that a Christian people should have laws to protect their day of rest from desecration. Regarding it as a day necessarily and divinely set apart for rest from

[Mohney *v.* Cook.]

worldly employments, and for the enjoyment of spiritual privileges, it is simply absurd to suppose that they would leave it without any legislative protection from the disorderly and immoral. The sentiment that sustains it must find expression through those who are elected to represent the will of their constituents.

So far as relates to the criminality of the act which we are now to consider, the mind of the state is expressed in the law that forbids all worldly employment on the Lord's day, under a penalty of four dollars. Being a law to enforce and protect a general and most valuable custom, it is not to be subjected to a narrow interpretation. But does the law, besides the penalty which it expresses, involve another, that he, who, while breaking the Sabbath, suffers wrong from the act of another, shall be without remedy? This would seem to be contrary to the rule that required that penal statutes shall be construed strictly as to the punishment, so that it shall not be enlarged by construction.

It is supposed, however, that this rule does not apply to this law, seeing that, where contracts are made on the Lord's day, the parties incur the penalty, and besides this neither of the parties can recover on the contract. But this instance falls under another rule that executory contracts made under forbidden circumstances, or on forbidden subjects, institute no legal duty, and therefore a legal claim for a breach of duty must have some other foundation. They are not in fact void, if the parties perform them in good faith. They are then executed contracts, and the state will protect title thus created, against all wrong-doers: 15 *Shepley* 463. An assignment for the benefit of creditors is void so far as executory, if not recorded according to law; but valid, so far as executed, before it is objected to by any one having a right: 5 *W. & Ser.* 100. A deceit practised in making a forbidden contract is remediless, because the incident goes with the principle: 12 *Met.* 24. So, of an insurance on a prohibited voyage: 1 *Doug.* 241. In such cases, if there be any relation between the parties, it depends upon the facts, and not upon the contract.

But the defence here is mainly put upon another principle, that if a man, by his own fault, contribute to the accident, he cannot recover. Even this rule has some qualifications. A sailor getting an excessive flogging for an offence, or one who gets an excessive beating in an affray begun by himself, or the excessive abatement of a nuisance, or one who is injured by a spring-gun, while trespassing on another man's ground, 4 *Bing.* 628, is not without remedy; for the law requires him, who takes upon himself the remedy of retaliation or punishment, even in cases of apparent necessity, to see that the measure of it be not excessive. Apply the same reasoning to the present case, and the defendant is not justified—for he occasioned a penalty much more severe than that of the statute.

[Mohney v. Cook.]

There are, no doubt, cases wherein an injured party will be remediless, because of his own fault, even when that fault does not contribute to the accident. A vessel engaged in the slave trade, piracy, or smuggling, and injured by another,—or the keeper of a gambling-house, injured in his business by a neighbouring nuisance, could have no remedy. Not, however, because the persons are out of the protection of the law for their offences, nor because their illegal business brought them to the place of danger; but because their business itself, with all its instruments, is outlawed. Prohibited contracts, prohibited trades, and prohibited things, receive no legal protection; but persons are never outlawed, and their lawful property is under the protection of the state, even when used improperly.

It is very apparent, therefore, that in considering this case, we must be careful in our distinctions. The fourth and eighth commandments are not confounded, because a man steals on the Sabbath day,—and on a conviction for Sabbath breaking, we do not punish for theft. And so the penalties for carelessness and for Sabbath breaking, are totally distinct, and the laws out of which they arise, are distinct in all their purposes and features.

The law relating to the Sabbath defines a duty of the citizen to the state, and to the state only; and hence it may be very proper for the state to refuse a remedy against itself or against any of its subdivisions, where an injury arises from bad roads, to one who is unlawfully travelling on the Lord's day: 10 *Met.* 363. But we should work a confusion of relations, and lend a very doubtful assistance to morality, if we should allow one offender against the law, to the injury of another, to set off against the plaintiff that he too is a public offender: 34 *Maine* 116; 5 *Porter* 208. An insurer of a ship is not relieved from his contract, because the master started on his voyage in violation of the law for the protection of sailors' rights: 7 *Man. & G.* 457. Nor can a buyer of spirits refuse payment, because the seller violated the revenue laws in the form of the sale: 3 *Barn. & Ad.* 221. A man may be punished for getting drunk, or for riding furiously along the street; and yet, if in such circumstances, and not because of any carelessness, he fall into a ditch, the man who improperly dug it could have no excuse. A breach of duty to the state does not necessarily involve a breach of duty to the defendant in such cases, and when it does not, it is simply an irrelevant fact, unless the law gives it relevancy in some express form.

The law requiring care in avoiding accidents, defines a duty to individuals only. It is most frequently applied to travel upon highways of land or water; though it applies to all cases in which persons are so near together that they are liable to injure each other by accident. It recognises the relation thus naturally arising, and declares the law of that relation to be mutual care.

[Mohney *v.* Cook.]

The rule that the party who sues must be without fault himself, has no other object than to prevent such fault, in circumstances of danger, as may contribute to the injury. It does not allow a party who does not take proper care of himself in such circumstances, to demand from another compensation for an injury which he may have himself occasioned.

In cases of this kind, the law does not inquire at all into the plaintiff's fault, except on proof that the defendant did the act from which the injury arises. Then, if it appear that the injury was not wilful, 5 *W. & Ser.* 24, and then only is it relevant to inquire whether the plaintiff, with due care, might not have avoided the injury, and this shows the only kind of fault which is admitted to silence his complaint. It must be a failure of duty under the circumstances of danger; a failure of duty to the party who caused the danger, so that it may be said that he brought the injury on himself.

We cannot see that Sabbath breaking is a fault of this description. If there is any secret and mysterious connexion between such a fault and the event here complained of, then it falls under the rule *causa proxima, non remota spectatur,* for the law judges of such causes only " by the outward appearance." It is only when we can discover no human fault contributing to the accident, that the law calls it an act of Providence.

It is said, however, that had it not been for the plaintiff's transgression of the law, his boat would not have been at the defendant's dam when it was. True enough; and so might it be said of boats and rafts arriving at Pittsburgh on Monday,—they would not have been there on Monday, had they not run on Sunday, and would have been saved from a certain accident then happening them. But when we are investigating the causes or conditions of an event, we investigate all the circumstances of the time and place, and ascertain their influence. But the time is not one of the circumstances of itself, and time cannot be a cause of anything except figuratively.

We acquire no additional light by the suggestion that the plaintiff had no right of highway on the Lord's day, for his worldly business; for this is only asserting one of the incidental results of the law. It could just as truly be said that a man's right to his farm, or factory, or boat, undergoes a similar qualification; yet no doubt he would have redress against any one injuring them wilfully or carelessly. Besides, it was not for the protection of roads, but of the Lord's day, that the law was passed, and the plaintiff could not have been punished as for an unlawful use of the road.

The maxim of the Roman law, *in pari delicto*, &c., has no influence in the case. As the Romans applied it, it is a mere logical rule that, where the judgment of the law is balanced on the evi-

[Mohney *v.* Cook.]

dence, that suit must fail. Then, *quare non potentior sit, qui teneat, quam qui persequitur? Dig.* 45, 1, 91, 3.

It is admitted here, that in a case of wilful trespass, this defence could not be allowed; and we may take this admission as indicating a definition of the rule. Then, in any other case, it will be allowed, and all freight and wages earned by or on steamboats, are tainted with illegality, if partly earned on the Lord's day; no insurance covers the risks of running on that day on inland highways, and all accidents must be absolutely charged to the carriers. Perhaps, if these and other consequences had been suggested to the counsel, they would have accepted them; but we cannot, for this would be adding penalties to the law that were not thought of when it was passed. Important as is the day of rest for man; important as are the religious institutions connected with it, and the civilization and moral refinement that grow out of and depend upon it and its institutions; important and necessary for all man's highest and noblest aims as is the religion, which, on that day, sends forth its strongest influence, we cannot protect it by any such latitudinarian interpretation of the law we are appointed to administer as is expected of us here.

Judgment reversed, and a new trial awarded.